1   **BUCHALTER NEMER**
    A Professional Corporation
2   GEORGE J. STEPHAN (SBN: 67692)
    1000 Wilshire Boulevard, Suite 1500
3   Los Angeles, CA  90017-2457
    Telephone: (213) 891-5222
4   Facsimile: (213) 630-5618
    Email:    gstephan@buchalter.com
5

6   **SMITH, GAMBRELL & RUSSELL, LLP**
    J. Joseph Bainton (Admitted Pro Hac Vice)
7   John J. Lee (Admitted Pro Hac Vice)
    250 Park Avenue, Suite 1900
8   New York, NY 10177
    Telephone: (212) 907-9700
9   Facsimile: (212) 907-9800
    Email:    jbainton@sgrlaw.com
10            jlee@sgrlaw.com

11  Attorneys for Plaintiff
    ENODIS CORPORATION
12

13

14                  **UNITED STATES DISTRICT COURT**

15                  **CENTRAL DISTRICT OF CALIFORNIA**

16

17  ENODIS CORPORATION,                     Master File No.
                                            CV 03-866 CAS (PJWx)
18          Plaintiff,
                                            *Honorable Christina A. Snyder*
19          vs.

20  EMPLOYERS INSURANCE COMPANY
    OF WAUSAU; *et al*.,                    **ENODIS CORPORATION'S**
21                                          **OPPOSITION TRIAL BRIEF**
            Defendants.
22                                          TRIAL:  February 26, 2009
                                            Time: 9:30 a.m.
23  AND RELATED CASES.                      Place: Courtroom 5

24
    This Document Relates To:  CV 04-4357
25  CAS (PJWx) (Enodis Corporation)

26

27

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

Preliminary Statement ............................................................... 1

Statement of Facts ..................................................................... 2

Consolidated's Bankruptcy and Alter Ego Claims Against Enodis ......................... 2

CNA's Partial Settlement ............................................................. 4

CNA's Purported "Account Stated" .................................................... 4

CNA's Retrospective Premium Theories .............................................. 7

Argument ................................................................................. 8

   I.  ENODIS HAS SATISFIED ALL FINANCIAL OBLIGATIONS TO ITS INSURERS AND CNA CANNOT CLAIM ANY RIGHT TO MORE ..... 8

  II.  CONTINENTAL FAILS TO MEET ITS BURDEN OF ESTABLISHING A PRIMA FACIE CASE FOR AN ACCOUNT STATED ........................ 9

     A. Continental Fails to State an Account ................................. 9

     B. Enodis Has at All Times Disputed CNA's Various and Inconsistent Demands for Payment ................................... 10

 III.  CNA CANNOT PREVAIL ON ITS RETROSPECTIVE PREMIUM THEORIES ............................................................. 11

     A. CNA is Barred by Order Denying Motion to Amend .................... 11

     B. CNA Waived its Rights to Reimbursement ..................................... 12

     C. Any Alleged Breach by Enodis is Excused by CNA's Breach of Contract and Bad Faith Conduct ................................... 13

 IV.  CNA IS NOT ENTITLED TO ATTORNEYS' FEES AND COSTS ....... 15

Conclusion ...................................................................... 16

# TABLE OF AUTHORITIES

**CASES**                                                                                      Page

*Bennett v. Potter,*
    180 Cal. 736 (Cal. 1919) ................................................................9

*Bowman v. Santa Clara County,*
    153 Cal. App. 2d 707 (Cal. App. 1957)........................................12

*California Pacific Homes, Inc. v. Scottsdale Ins. Co.,*
70 Cal. App. 4th 1187 (1999) ................................................................8

*Crest Catering Co. v. Superior Court of Los Angeles County,*
    62 Cal. 2d 274 (1965) .......................................................... 3

*Crisci vs. The Security Ins. Co. of New Haven, CT.,*
    66 Cal. 2d 425 (Cal. 1967) .................................................... 14

*Darling Intern., Inc. v. Baywood Partners, Inc.,*
    2006 WL 2374635 (N.D. Cal. August 16, 2006) .........................................12

*Egan v. Mutual of Omaha Ins. Co.,*
    24 Cal. 3d 809 (Cal. 1979) ................................................................14, 15

*Filet Menu, Inc. v. C.C.L. & G., Inc.,*
    79 Cal. App. 4th 852 (2000) ................................................................13

*FMC Corp. v. Plaisted & Cos.,*
    61 Cal. App. 4th 1132 (1998) ................................................................8

*Ghirardo v. Antonioli,*
    14 Cal. 4th 39 (1996) ................................................................12

*Hamilton v. Maryland Cas. Co.,*
    27 Cal. 4th 718 (Cal. 2002) ................................................................14

*Hansen v. Fresno Jersey Farm Dairy Co.,*
    220 Cal. 402 (Cal. 1934) ................................................................9

*McCormick v. Sentinel Life Ins. Co.,*
    153 Cal. App. 2d 1030 (Cal. Ct. App. 1984) ................................................................15

*Montgomery Ward & Co. Inc., v. Imperial Cas. & Indem. Co.,*
    81 Cal. App. 4th 356 (2000) ................................................................8

*Schwartz v. State Farm Tire & Cas. Co.,*
    88 Cal. App. 4th 1329 (Cal. Ct. App. 2001) ................................................................14

*Waller v. Truck Ins. Exchange, Inc.,*
    11 Cal. 4th 1 (1995) ................................................................12

*Whittaker Corp. v. Allianz Underwriters, Inc.,*
 11 Cal. App. 4th 1236 (1992) ......................................................................8

*Wolkowitz v. Redland Ins. Co.,*
 112 Cal. App. 4th 154 (Cal. Ct. App. 2003) ...............................................14

*Zinn v. Fred R. Bright Co., Inc.,*
 271 Cal. App. 2d 597 (Cal. Ct. App. 1969) .................................................9

## OTHER AUTHORITIES

JUDICIAL COUNCIL OF CALIFORNIA CIVIL JURY INSTRUCTIONS (2008),
No. 373 .............................................................................................................9

14 COUCH ON INS. § 203:13 (3d ed. 2006) ............................................................15

**Preliminary Statement**

Plaintiff Enodis Corporation respectfully submits this opposition trial brief in response to the trial brief of Defendants Continental Casualty Company and Transportation Insurance Company.[1]  Enodis respectfully refers to and incorporates its initial trial brief filed with this Court on February 19, 2009.  Terms defined in that brief are used herein without further definition or explanation.

An important part of any company's business practice is to buy and maintain liability insurance.  Occasionally, in the course of their business, companies experience unavoidable situations where they must call upon their insurers for protection.  The insurer then has a duty to provide that protection.  California, like many states, construe insurance policies broadly in favor of insureds, requiring insurers to take their duty seriously to properly protect their insureds.

In this case, CNA did not do its job as Enodis's insurer.  For example, when Enodis asked CNA to provide a defense, it did not.  Enodis had to retain its own counsel.  When CNA did retain counsel, it did so for the purposes of researching theories to sue its insured, Enodis, during a time it should have been protecting Enodis.  CNA even attempted to charge Enodis for the legal fees incurred in that endeavor.  When Enodis asked CNA to assist in the ultimate resolution of all claims against all insureds under Enodis's insurance, CNA refused.   When CNA eventually settled claims, it did so without obtaining a release for Enodis.

Incredibly, CNA is now seeking to recover over $3 million from Enodis.  Notwithstanding the fact that CNA cannot demonstrate that it did anything to warrant such a windfall as Enodis's insurer, which is a sufficient reason to dismiss

---

[1]  Despite the tight briefing schedule, especially for the parties' respective opposition briefs, which are due on Monday, February 23, 2009, Enodis's counsel did not receive CNA's trial brief until Friday, February 20, 2009, a day after it was due.  A complete set of CNA's trial brief and supporting papers were not received until 12:30 p.m. (EST).   In light of the schedule for the remainder of the proceedings in this action, Enodis will not burden the Court with an application for more time to respond to CNA's late brief.

CNA's claims for damages, CNA is not entitled to any money as a matter of law:

- Since Enodis has satisfied its SIR obligations, California law bars any further monetary recovery by CNA.
- With respect to its claim for account stated, CNA fails to satisfy the elements for such a claim as set forth by California law, therefore failing its burden to establish a prima facie case.
- Any claims for damages based on retrospective premium theories were barred by the Court's November 19, 2007 order denying CNA's motion for leave to amend.

Based upon the foregoing, and as shown below, CNA has failed to meet its burden on any of its counterclaims for recovery. Enodis is entitled to judgment dismissing CNA's counterclaims in their entirety and granting Enodis an award of attorneys' fees and costs.

### Statement of Facts

Enodis respectfully refers to and incorporates herein the facts set forth in its opening trial brief, filed on February 19, 2009. Further relevant facts are set forth below.[2]

### Consolidated's Bankruptcy and Alter Ego Claims Against Enodis

In or about January 1998, all capital stock of Consolidated was purchased by William Hall. (Ex. 275.) Prior to purchasing Consolidated, Mr. Hall had been advised of the existence of Consolidated's problems, including the products liability litigation. (Declaration of J. Joseph Bainton executed March 2, 2007 ("Mar. 2007 Bainton Decl." [DKT 510]) ¶ 21.) Mr. Hall had received due diligence reports and confidential offering memorandum, which described in considerable detail the loss

---

[2] For ease of reference and as a result of the briefing schedule for the parties' respective trial briefs, exhibits supporting Enodis's claim have been submitted with its opening brief. Only exhibits in opposition to CNA's claim are being submitted with this brief. A full set of exhibits, including marked deposition testimony, and an index will be lodged with the Court on the scheduled "day of trial," which is February 26, 2009, as required by Local Rules 16-2.7 and 32-1.

contingency represented by the claim that certain Consolidated furnaces were defective in their design. (*Id.*) Pursuant to the terms of the sale, Enodis agreed not to rescind the Policies (or other insurance policies) as to Consolidated, and Consolidated agreed to reimburse Enodis for any and all expenses incurred by Enodis under the Policies (or other insurance policies) based on claims against Consolidated. (Ex. 275 ¶¶ 6.8, 7.5.)

Within approximately five months of Mr. Hall's purchase of Consolidated, it filed bankruptcy. (Mar. 2007 Bainton Decl. ¶ 15.) Consolidated's Chapter 11 case was later converted to Chapter 7 and Daniel Freeland was appointed its Chapter 7 Trustee. (Ex. 23; PTO ¶ D.18.) After Consolidated filed for bankruptcy, Consolidated and some of its original equipment manufacturer distributors ("OEMs") made claims against Enodis contending that Enodis was the alter ego of Consolidated or was otherwise responsible for damages caused by the allegedly defective furnaces designed and manufactured by Consolidated. (*See, e.g.,* Ex. 337.)

As a consequence of Consolidated's bankruptcy filing, all litigation against it, including the *Salah Action*, was automatically stayed pursuant to Bankruptcy Code § 362. (PTO ¶ D.19.) In or about June 2000, the Salah plaintiffs moved for limited relief from the automatic stay so that they could pursue their claims against persons other than Consolidated which might be liable in whole or in part for Consolidated's debt. By order dated August 10, 2000, the United States Bankruptcy Court for Northern District of Indiana granted the Salah plaintiffs the limited relief from the automatic stay that they had sought. (Exs. 316, 23.) Once the automatic stay was vacated, Enodis perceived a leadership vacuum and, therefore, persuaded various insurance carriers, including CNA, to attend meetings to discuss the tort litigation. (Mar. 2007 Bainton Decl. ¶ 85.) At these meetings, everyone looked to CNA (and Wausau) to tender its policy limit per occurrence, yet CNA (and Wausau) failed to do so. (Deposition of J. Joseph Bainton dated August 31, 2005 ("Aug. 31, 2005 Bainton Deposition") at 223:10-227:25; 240:2-11.)

**CNA's Partial Settlement**

Instead of banding together with other carriers to resolve all claims against all of its insureds arising from the allegedly defective design of the Consolidated furnaces, CNA (and Wausau) negotiated a separate settlement of a portion of the Salah claims.  (Ex. 52.)  The Trustee and Enodis jointly objected to the proposed settlement of Wausau and CNA to compromise some but not all of the claims being asserted in the *Salah Action* (Ex. 123), and the Bankruptcy Court did not approve the motion for partial settlement.  Notwithstanding the denial of the initial motion for Bankruptcy Court approval, CNA failed to make any serious effort to assist all of its insureds achieve a global resolution of all tort claims arising from Consolidated's design of an allegedly defective line of furnaces.

CNA and Wausau continued their plan of action and entered into a settlement on behalf of the OEMs in the *Salah Action*.  (Ex. 51.)  As part of this settlement, however, CNA failed to obtain a release of Enodis from any of the claims that the OEMs had asserted against it.  (*Id.*)  CNA did not seek, much less obtain, the informed consent of Enodis prior to entering into such settlement pursuant to which CNA asserted that it had discharged its liability to Enodis and all of the other insureds under the Policies by reason of making settlement payments.  (Ex. 174.)  Indeed, prior to entering into this agreement, CNA was on actual notice that Enodis objected to its conduct and had demanded that it tender up to its policy limits toward a global rather than piecemeal resolution of the Consolidated furnace problem.  (*Id.*)

**CNA's Purported "Account Stated"**

CNA's demand for damages against Enodis are based on its claims for "account stated" and for "unjust enrichment."  (PTO at 32:8-14 and 33:3-16; Order denying CNA's motion for leave to file an amended counterclaim dated November 19, 2007 ("Order Denying Motion to Amend" [DKT 588]), Section I at 1 ("alleging claims for account stated and unjust enrichment."))

On or about June 1, 2000, CNA sent "quarterly loss information and invoices" to Enodis, but stating that CNA was not seeking any money from Enodis. (Ex. 87.)  On or about July 12, 2000, Enodis requested CNA to provide copies of the underlying bills and other documentation supporting CNA's quarterly loss information and invoices.  (Ex. 88.)   A review of the limited documentation provided by CNA showed that CNA was charging Enodis for services provided by the San Francisco law firm of Munger, Tolles & Olson, LLP ("MTO") in connection with suing Enodis on behalf of one or more of the OEMs.  (Ex. 95.)   Enodis disputed any obligation to pay for others to sue it and inquired why CNA thought that Enodis might have such obligation. (*Id.*)  Despite Enodis's inquiries, the matter lay dormant for years.

On or about May 23, 2003, Enodis received a bill in the amount of $782,806 from CNA relating to "Salah, claim number 13484688."  (Declaration of J. Joseph Bainton executed December 4, 2006 ("Dec. 2006 Bainton Decl." [DKT 482]) ¶ 3; Ex. 113; PTO 47:9-11.)  Prior to that date, Enodis had never received any bills from CNA relating to the tort claim alleged in the *Salah Action*.  (Dec. 2006 Bainton Decl. ¶ 3.)  On or about May 29, 2003, Enodis responded and requested that CNA provide Enodis with "copies of the underlying bills and invoices relating to the amount demanded."  (Ex. 99.)   Enodis also sought an explanation for CNA's payments to MTO, that was representing a party adverse to Enodis in litigation, and had otherwise persistently acted adversely to the best interests of Enodis. (*Id.*) Enodis further inquired what prompted CNA to change its mind about seeking payments from Enodis, and requested identification of the provisions of the Policies CNA was demanding payment under. (*Id.*)

On or about June 12, 2003, CNA stated that it would provide a response "shortly" and that "the June 23, 2003 payment deadline will be extended while [CNA and Enodis] attempt to resolve the matter amicably."  (Ex. 100.)  On or about August 12, 2003, Enodis's counsel stated in a letter, among other things, that

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

1  Enodis had been assembling documents in its possession bearing on the dispute

2  with CNA, and confirmed that "neither of our clients will commence any litigation

3  until after we have had a mutual opportunity to explore together in good faith the

4  factual basis of your client's claims." (Ex. 101.)

5      It was not until in or about March 2004 when Enodis heard from CNA again

6  and received a second bill in the amount of $784,525 relating to "[t]he Salah Claim

7  [which was] assigned Claim No. 13484688 and May 1, 1991 date of loss." (Dec.

8  2006 Bainton Decl. ¶ 4; Ex. 102.) That bill further stated that "[p]otential coverage,

9  therefore, fell under Policy No. GL007415736 and Claim Service Agreement No.

10 807415737 – both with effective dates of April 30, 1991 to April 30, 1992." (Ex.

11 102 at 2.) The bill provided a purported summary "[detailing] the payments which

12 generated the amounts owed by [Enodis] to [CNA]." (Ex. 102.) The bill also

13 contained an explanation that the amounts due under the billing period of May 1,

14 2001 through August 1, 2001 "represents the sum of the $250,000 SIR on paid

15 losses plus additional paid expenses" and that "[t]he paid losses represent the

16 settlement proceeds on the claim . . ." (*Id.* at 3.) The reference is to a singular SIR

17 on a singular claim, and is consistent with the single occurrence stipulation of the

18 parties stated in open court on February 9, 2009. CNA also acknowledged that a

19 portion of its claim is for payments made to MTO. (*Id.* at 3, 4.) Since March 2004,

20 Enodis has not received any actual bills from CNA. (Dec. 2006 Bainton Decl. ¶ 4.)

21     No "account stated," "invoice," or "statement of account" is identified by

22 CNA in its portion of PTO other than the documents described above. (PTO at 39-

23 53.) There was never an account stated by and between Enodis and CNA, in that

24 (a) there was a dispute, rather than an agreement between the parties concerning the

25 amount allegedly due from Enodis to CNA, (b) there was a dispute, rather than a

26 promise, by Enodis that it would pay the amount allegedly due, and (c) Enodis

27 objected to and disputed the statements by CNA within a reasonable time.

28

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

ENODIS'S OPPOSITION TRIAL BRIEF

**CNA's Retrospective Premium Theories**

The first time Enodis heard of CNA's purported reimbursement claim under retrospective premium theories was at the deposition of Daniel Peterson in 2005. (Dec. 2006 Bainton Decl. ¶ 5; Deposition of Daniel Peterson dated July 26, 2005 ("Peterson Deposition") at 64:22-85:12.) The first time CNA attempted to explain its purported reimbursement claim in excess of $2 million in writing was when it filed a motion for summary judgment, or in the alternative summary adjudication of its counterclaim against Enodis in November 2006. (Dec. 2006 Bainton Decl. ¶ 6; Notice of Motion and Memorandum of Points and Authorities dated November 7, 2006 ("CNA's 2006 Motion" [DKT 468]); undated Declaration of Daniel Peterson submitted therewith ("2006 Peterson Decl." [DKT 470]) ¶¶ 22-32; Order denying CNA's motion dated December 18, 2006 ("2006 Order" [DKT 491]), Sec. III. C. at 6.) Enodis has been carefully monitoring the rendering of additional bills by CNA because Enodis believed that it could not assert a new bad faith billing practices claim against CNA based upon what CNA was "thinking" about doing as opposed to what CNA actually did. (Dec. 2006 Bainton Decl. ¶ 6.)

In its belated motion for leave to amend, CNA sought to add a breach of contract claim against Enodis seeking "damages resulting from [Enodis's] failure to reimburse [CNA] for amounts due and owing under the retrospective reimbursement provisions of the policies and the Claim Service Agreement incorporated into the terms of the Continental policy . . ." (Order Denying Motion to Amend, Section III at 4, quoting CNA's proposed amended counterclaim at 11.) In denying CNA's motion, this Court concluded that "CNA should have known that the presently operative counterclaim did not contain a breach of contract claim by at least December 2006 . . . and that CNA [had] unduly delayed in pursuing its claim for breach of contract." (*Id.*, Section III at 5.) Nevertheless, CNA continues to insist that it seeks in excess of $784,525 on this theory plus attorneys' fees and costs. (PTO at 49:2-23; CNA's trial brief [DKT 675].)

**Argument**

## I.  ENODIS HAS SATISFIED ALL FINANCIAL OBLIGATIONS TO ITS INSURERS AND CNA CANNOT CLAIM ANY RIGHT TO MORE

For the purposes of this trial, the parties have agreed that the claim that Consolidated's furnaces at issue were defective in their design constitutes a single occurrence.  This is consistent with California law that, for the purposes of determining the number of occurrences under a liability insurance policy, an occurrence has generally been held to mean the underlying cause of the injury, rather than the injury or claim itself.  *Whittaker Corp. v. Allianz Underwriters, Inc.*, 11 Cal. App. 4th 1236, 1242 (1992); *FMC Corp. v. Plaisted & Cos.*, 61 Cal. App. 4th 1132, 1161 (1998).

With respect to single occurrence situations, an insured need only pay one SIR regardless of how many other policies that the single occurrence might trigger. *California Pacific Homes, Inc. v. Scottsdale Ins. Co.*, 70 Cal. App. 4th 1187 (1999); *Montgomery Ward & Co., Inc. v. Imperial Cas. & Indem. Co.*, 81 Cal. App. 4th 356 (2000).  In circumstances of continuing injury over a period of years arising from a single cause, as here, the insured is obliged to pay only one SIR and the insurers for those years are obliged to share the balance of the loss up to policy limits. *California Pac. Homes*, 70 Cal. App. 4th 1187; *Montgomery Ward & Co., Inc.*, 81 Cal. App. 4th 356.  Courts have adopted this rule because allowing the insurer to "stack" SIRs applicable to successive policies when liability arises from a single occurrence would have the effect of affording the insured far less coverage than it purchased, thereby effectively creating a windfall for the insurer at the insured's expense. *California Pac. Homes,* 70 Cal. App. 4th at 1194; *Montgomery Ward*, 81 Cal. App. 4th at 370.  Any further payment by the insured is barred and, simply put, the insurer is owed "insurance."

Enodis paid Wausau (in excess of) $250,000 in satisfaction of the SIR and otherwise any further payment obligations required under the Wausau insurance

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

policy.  (Ex. 115; DeVittori Deposition at 9:4-12:1.)  As such, as a matter of law, Enodis has satisfied all of its payment obligations under all of the insurance policies triggered by the underlying furnace-related products liability litigation, which, as CNA agrees, constitutes a single occurrence.  Enodis owes nothing further to any of its insurers, including CNA.

## II.  CONTINENTAL FAILS TO MEET ITS BURDEN OF ESTABLISHING A PRIMA FACIE CASE FOR AN ACCOUNT STATED[3]

Even assuming *arguendo* that the stacking prohibition does not apply here, CNA cannot prevail on any of its claims for payment.  With respect to its account stated claim, Continental fails to establish a prima facie case.

To prevail on a claim for account stated, a creditor must show (a) that debtor owed creditor money from previous financial transactions; (b) that debtor and creditor, by words or conduct, agreed that the amount stated in the account was the correct amount owed to creditor; (c) that debtor, by words or conduct, promised to pay the stated amount to creditor; (d) that debtor has not paid creditor any or all of the amount owed under this account; and (e) the amount of money debtor owes creditor.  JUDICIAL COUNCIL OF CALIFORNIA CIVIL JURY INSTRUCTIONS (2008), No. 373; *see also Zinn v. Fred R. Bright Co., Inc.,* 271 Cal. App. 2d 597, 600 (Cal. Ct. App. 1969) (citing *Bennett v. Potter,* 180 Cal. 736, 745 (Cal. 1919)); *Hansen v. Fresno Jersey Farm Dairy Co.,* 220 Cal. 402, 408 (Cal. 1934).  CNA does not satisfy these elements.

### A.    Continental Fails to State an Account

The gravamen of an account stated claim lies in the stating of the account itself.  Continental does not state an account here.  As a preliminary matter, its counterclaim simply states that "[t]he amount due, owing and unpaid is subject to

---

[3] Continental filed its counterclaim against Enodis on March 11, 2005 [DKT 38], before Enodis filed its second amended complaint adding Transportation as a defendant.  CNA never amended its counterclaim to add Transportation as a counterclaim-plaintiff.

1   proof at trial." (Continental's counterclaim ¶ 17.)  By letter dated May 13, 2003,

2   however, CNA demanded payment from Enodis in the amount of $782,806.  CNA

3   now contends that Enodis owes CNA roughly $2.4 million in purported

4   reimbursement charges (plus attorneys' fees and costs), but has not yet sent an

5   invoice for this new demand.  The changing nature of the amount sought in this

6   claim shows that CNA has failed to "state" the requisite "account."  For this reason

7   alone, the Court should find in favor of Enodis on this claim.

8           **B.      Enodis Has at All Times Disputed CNA's Various and Inconsistent**

9                   **Demands for Payment**

10          Enodis has not made any promise to pay any  of the differing amounts that

11  CNA contends it is owed in reimbursement obligations.   In fact, Enodis has

12  consistently disputed CNA's various demands for payment.  On or about July 12,

13  2000, Enodis requested that CNA provide copies of the underlying bills and other

14  documentation supporting CNA's demand for payment, which CNA stated it was

15  not seeking at the time.  (Ex. 88.)  A review of the limited documentation provided

16  by CNA showed that CNA was demanding reimbursement for legal fees for

17  services by MTO in connection with suing Enodis on behalf of one or more of the

18  OEMs.  (Ex. 95.)  Enodis disputed any obligation to pay for others to sue Enodis

19  and inquired why CNA thought that Enodis might have such obligation.  (*Id.*)  This

20  explanation was never provided.

21          CNA's May 2003 invoice for $782,806 contained virtually no explanation or

22  documentation to support it.   (Ex. 113.)   Enodis responded to this demand by

23  requesting copies of the underlying bills and any other relevant information relating

24  to the amount demanded.  (Ex. 99.)  When CNA finally responded with a summary

25  of payments purportedly made by CNA in connection with the *Salah Action*, it

26  claimed that Enodis owed $784,525 instead.  (Ex. 102.)  In response to CNA's new

27  position, Enodis contended, among other things, that (a) it had paid the single SIR

28  applicable to the occurrence from which the *Salah Action* arose and therefore it

10

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

could not possibly owe CNA any money relating to the *Salah Action*, (b) in any event, it had paid the policy aggregate to CNA in respect to other claims, and (c) it was still waiting for an answer as to why CNA paid for the legal expenses of others to sue its insured Enodis was not utter bad faith.  (Exs. 104, 106, 107.)  Enodis has consistently disputed CNA's demands for reimbursement in no uncertain terms.  Certainly, Enodis never promised to pay any of the various amounts allegedly due.  CNA's counterclaim for an account stated, then, necessarily fails.

### III.  CNA CANNOT PREVAIL ON
### ITS RETROSPECTIVE PREMIUM THEORIES

#### A.    CNA is Barred by Order Denying Motion to Amend

CNA improperly pursues theories of liability based on retrospective premiums, claiming breaches of six insurance policies in addition to its counterclaim for account stated, together with "tag along" companion claims of declaratory relief and unjust enrichment.  (CNA's trial brief at 15-22.)  CNA contends that Enodis has failed to pay under the respective Retrospective Premium Endorsement provisions of the policies effective from April 30, 1986 through April 30, 1990, and under the Claim Service Agreement, incorporated into the policy effective April 30, 1991 through April 30, 1992.  (*Id.*)  Simply put, CNA seeks to enlarge its claim from $784,525 asserted both before litigation and during discovery to the $2.4 million claim it was "thinking about" asserting at the time of Mr. Peterson's deposition in July 2005 – a claim that Mr. Peterson could not explain.

In October 2007, CNA moved to amend its counterclaims based on this exact theory.  (*Compare* CNA's trial brief at 15-22 *with* CNA's proposed first amended counterclaim filed as an exhibit to Declaration of Teresa Wainman executed October 10, 2007, at 8-11 and *with* CNA's 2006 Motion [DKT 557]).  The Court denied that motion, finding  that CNA had "unduly delayed in pursuing its claim for breach of contract" seeking "damages resulting from [Enodis's] failure to reimburse [CNA] for amounts due and owing under the retrospective reimbursement

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

1  provisions of the policies and the Claim Service Agreement . . ." (Order Denying
2  Motion to Amend, Sec. III at 4, quoting CNA's proposed amended counterclaim at
3  11.)  The Court reasoned that allowing CNA to amend at such a late juncture of the
4  litigation would not only "unduly prejudice Enodis," but it would also disrupt the
5  established trial schedule. (*Id.*)

6      The retrospective premium theories of recovery are not part of this case.
7  CNA cannot, therefore, seek any recovery based on those theories, and the Court
8  should not otherwise consider them.

9          **B.      CNA Waived its Right to Reimbursement**

10     Even if the Court permits CNA to pursue its retrospective premium theories,
11  CNA has waived any claims under such theories.   The retrospective premium
12  theories were not developed until March or April of 2005, 11 years after the *Salah*
13  *Action* was first filed, 7 years after the 1999 Release Agreement was signed, 5 years
14  after Enodis first raised issues concerning the propriety of MTO's fees, and nearly 2
15  decades after the 1986 policy was in effect.  CNA did not reveal these theories,
16  under which it now seeks $2.4 million, until the July 25, 2005 deposition of Mr.
17  Peterson, and did not articulate any purported claim until it filed a motion for
18  summary judgment in November 2006.  CNA's undue delay in reaching the amount
19  it now claims in reimbursement charges warrants waiver.

20     A waiver is the intentional relinquishment of a known right after knowledge
21  of the facts. *Darling Intern., Inc. v. Baywood Partners, Inc.*, 2006 WL 2374635,
22  7 (N.D.Cal. 2006);  *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 49 (1996); *Waller v.*
23  *Truck Ins. Exchange, Inc.,* 11 Cal. 4th 1, 31 (1995).  The waiver may be either
24  express, based on the words of the waiving party, or implied, based on conduct
25  indicating an intent to relinquish the right.  *Id; Bowman v. Santa Clara County*, 153
26  Cal.App.2d 707, 714, 315 P.2d 67, 71 (Cal. App. 1957) (finding that a party
27  implicitly waived its right to recover on damages claimed because of the long delay
28  in billing for it.)

1        CNA has never sent Enodis an invoice in excess of $784,525.  Prior to its

2    post-lawsuit decision to distribute the Salah claim into five separate claims over

3    five separate policy periods, CNA treated the Salah claim as a single occurrence

4    with a single date of loss.  In addition to the unreasonable delay, those actions are

5    inconsistent with CNA's current assertion.  Accordingly, CNA waived its right to

6    assert the present claim.  *See Crest Catering Co. v. Superior Court of Los Angeles*

7    *County*, 62 Cal. 2d 274, 278 (1965) ("Waiver is the result of an act which,

8    according to its natural import, is so inconsistent with an intent to enforce the right

9    as to induce a reasonable belief that such right has been relinquished.")

10    **C.**    **Any Alleged Breach by Enodis is Excused by CNA's Breach of**

11    **Contract and Bad Faith Conduct**

12        When a party materially breaches a contract, the aggrieved party is excused

13    from further performance of all uncompleted portions of the contract.  *Filet Menu,*

14    *Inc. v. C.C.L. & G., Inc.*, 79 Cal. App. 4th 852, 861 (2000).  Despite having been

15    tendered the defense of the *Salah Action* under the various Policies it had issued to

16    Enodis, CNA failed to provide any protection to its primary insured, Enodis.

17    Instead, CNA allegedly exhausted its policy limits to settle a portion of the *Salah*

18    *Action* in a partial settlement that left Enodis exposed to potential and real alter ego

19    claims.  CNA has also breached the Claim Service Agreement, which grants CNA

20    discretion to settle claims for an amount of $250,000 or less.  (Ex. 312.)  Over the

21    objection of Enodis, CNA entered into a partial settlement to which it expended far

22    more than the $250,000 it was authorized to spend on settlement.   (Ex. 51.)

23    Furthermore, a review of CNA's internal documents also shows its breach of the

24    Claim Alert Special Instructions, which direct CNA to "consult with a designated

25    representative of the insured prior to initiating a lump sum settlement for $10,000

26    or more."  (Ex. 818 at CC 20991-92; Deposition of Orient Melone dated February

27    16, 2006 ("Melone Deposition") at 19:9-24:17.)  It is undisputed that CNA entered

28

1   into a partial settlement that cost vastly far more than the $10,000 it was authorized
2   to spend.  (Ex. 51.)

3        CNA's improper payment of fees charged by MTO to research and prosecute
4   a legal action by Trane against Enodis is further evidence of CNA's breach, which
5   excuses any alleged breach of contract on Enodis's part.  CNA's improper payment
6   of Trane's legal expenses has caused actual damages Enodis incurred in defense of
7   that action.  Finally, CNA's demands for reimbursement from Enodis for Trane's
8   legal expenses to sue Enodis speaks to the egregiousness of CNA's conduct.

9        Not only has CNA breached its contract with Enodis, it also breached its duty
10   of implied covenant of good faith and fair dealing.  Implied in every contract is a
11   covenant of good faith and fair dealing that neither party will injure the right of the
12   other to receive the benefit of the agreement. *E.g., Hamilton v. Maryland Cas. Co.*,
13   27 Cal. 4th 718, 724 (Cal. 2002); *Crisci vs. The Security Ins. Co. of New Haven,*
14   *CT.*, 66 Cal. 2d 425, 429-430 (Cal. 1967); *Wolkowitz v. Redland Ins. Co.*, 112 Cal.
15   App. 4th 154 (Cal. Ct. App. 2003).  CNA's partial settlement of the *Salah Action*
16   indisputably denied Enodis the benefit it would have enjoyed regardless of the
17   outcome of a trial.  While it is true that certain other insureds under the CNA
18   policies such as Trane (whose rights arise from the "Vendor Endorsement") did
19   obtain a benefit from the Salah settlement as structured by CNA (and Wausau), the
20   implied covenant of good faith and fair dealing imposes a duty on the carrier not to
21   favor the interests of one of its insureds over the other during settlement
22   negotiations.  *See Schwartz v. State Farm Tire & Cas. Co.*, 88 Cal. App. 4th 1329,
23   1337 (Cal. Ct. App. 2001) ("An insurer who favors the interest of one insured over
24   those of the other violates the implied covenant of good faith and fair dealing.").

25        By placing its own financial interests ahead of the interests of its insured,
26   CNA has breached its duty of good faith and fair dealing.  *See Egan v. Mutual of*
27   *Omaha Ins. Co.*, 24 Cal. 3d 809, 818-19 (Cal. 1979) ("For the insurer to fulfill its
28   obligation not to impair the right of the insured to receive the benefits of the

14

agreement, it again must give at least as much consideration to the latter's interests as it does to its own."); *McCormick v. Sentinel Life Ins. Co.*, 153 Cal. App. 2d 1030 (Cal. Ct. App. 1984) ("requir[ing] an insurer to place the interests of its insured above its own or its stockholders . . . [and holding that insurer's] conduct is unreasonable if inconsistent with placing the insured's interests above those of the insurance company and its stockholders"); 14 COUCH ON INS. § 203:13 (3d ed. 2006) ("The courts have said time and time again that an insurer cannot place its interests above the interests of the insured.").

## IV.   CNA IS NOT ENTITLED TO ATTORNEYS' FEES AND COSTS

CNA claims that it had incurred $746,507.75 in attorneys' fees and costs related to this litigation.  (CNA's trial brief at 20.)  In support of this claim, CNA has submitted redacted invoices from Michelman & Robinson, LLP.  For the reasons discussed above seeking denial of CNA's counterclaim, CNA's demand for attorneys fees and costs should also be denied.   Should CNA prevail on its counterclaim, however, Enodis seeks a hearing to determine the reasonableness of CNA's claim for fees and costs.  In light of CNA's past conduct of charging Enodis improper fees, including MTO's legal fees, such a hearing will be particularly appropriate and necessary in this case.

1

**Conclusion**

2

      Plaintiff Enodis respectfully requests that the Court, after due consideration

3

of the evidence presented and the application of the governing law, dismiss CNA's

4

counterclaim in its entirety and enter judgment in favor of Enodis and against CNA.

5

6

Dated:  February 23, 2009

7

Respectfully Submitted:

8

BUCHALTER NEMER

9

A Professional Corporation

10

By:     /s/ – George J. Stephan

11

     George J. Stephan
     Attorneys for Plaintiff and Counter-

12

     defendant Enodis Corporation

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28